HARRISON v. CRUSE.

5-2320                                      343 S. W. 2d 789

Opinion delivered March 13, 1961.

John Wm. Murphy, Hubert L. Burch, for appellant.

Greenhaw & Greenhaw, for appellee.

ED. F. McFADDIN, Associate Justice. This appeal results from the unsuccessful effort of the appellant, Mr. Harrison, to have a resulting trust impressed on certain real and personal property. The appellees (defendants below) constitute the administrator and heirs at law of Mrs. Bess Yates, who died intestate on September 28, 1959, with the legal title to all of the properties in her name.

The defendants, in addition to pleading the "Dead Man's Statute"[1] (Section 2 of the Schedule of the Arkansas Constitution), also urged that Mr. Harrison

---

[1] The germane portion reads: ". . . in actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with, or statements of, the testator, intestate, or ward, unless called to testify thereto by the opposite party . . ."

had no interest in the properties; that there was no written contract between the parties; and that Mr. Harrison could not offer the *quantum* of evidence required to establish a trust. The Chancery Court, after hearing the testimony *ore tenus,* (a) dismissed that portion of the complaint which sought to impose a resulting trust; (b) awarded Mr. Harrison the title to certain cattle and other personal property; and (c) rendered a decree against Mr. Harrison for rents accrued after the death of Mrs. Yates. There is no cross-appeal by the appellees from the awards made to Mr. Harrison; but Mr. Harrison prosecutes this appeal and urges, *inter alia,* the matters herein to be discussed.

I. *Appellant's Claim Of A Resulting Trust.* At the outset, we recognize the statement contained in Restatement of the Law of Trusts, 2d Ed. § 454: "Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise. . . ." We have held in a long line of cases that the evidence to establish a resulting trust must be clear, cogent, and convincing. See *Nelson* v. *Wood,* 199 Ark. 1019, 137 S. W. 2d 929; *Frasier* v. *Hanes,* 220 Ark. 765, 249 S. W. 2d 842; *Neill* v. *Neill,* 221 Ark. 893, 257 S. W. 2d 26. There were thus at least two essentials which Mr. Harrison must establish before he could claim a resulting trust. The first was that, when the property was transferred to Mrs. Yates, he paid a portion of the purchase price under an agreement then made that he would have an interest in the property; and, secondly, he must prove all of this by evidence that is *"clear, cogent, and convincing."*

A careful review of the record convinces us that Mr. Harrison failed in both of the requirements. When he attempted to testify as to the conversations between him and Mrs. Yates, he was constantly met with Section

2 of the Schedule of the Arkansas Constitution, commonly called the "Dead Man's Statute." Furthermore, if such objection had never been made and we were free to consider all of Mr. Harrison's offered testimony, we would nevertheless be of the opinion that he failed to offer the *quantum* of evidence required.

Mr. Harrison and Mrs. Yates, both past middle age, were friends and companions. For approximately twenty years they occupied the same house; but the bank account was in Mrs. Yates' name. She was a widow and received a monthly pension check because of her husband's governmental connection; and she also received a check for services in a local store. Mr. Harrison was for some years an electrician at the Veterans Administration. Then later he sold awnings and storm windows under the business name of Ozark Home Improvements. The only bank account Mr. Harrison ever had was in the said business name, and that account related only to the said business. From 1937 until 1948 Mr. Harrison worked at the Veterans Administration Hospital; and he testified that he endorsed all of his salary checks and Mrs. Yates deposited them in her bank account; and that the real and personal property was purchased in her name, when, in truth and in fact, he and Mrs. Yates were joint owners in equity, since he paid half of the purchase price of all properties. It was because of such testimony that Mr. Harrison sought to have a resulting trust imposed on the property, the legal title to which was in the name of Mrs. Yates.

Mr. Harrison worked as an electrician at the Veterans Administration Hospital from 1937 to 1948. His starting salary was $1,020.00 a year, and he was earning $2,780.00 annually when he resigned in 1948. He did not give the figures for each year, but if we take the average of these amounts, it is $1,900.00 a year. That average of $1,900.00 a year for the twelve years that he worked would make a total of $22,800.00 for the twelve years. There is no substantial evidence anywhere in the record that Mr. Harrison had any other source of income except

the amounts received from the Veterans Administration during the twelve years that he worked there. But he continued to live in the home with Mrs. Yates until her death in September, 1959. From January 1, 1937 to September 29, 1959 is a few days more than twenty-two years and eight months, or a total of 272 months. In that entire period of 272 months Mr. Harrison established a gross "take-home pay," as previously calculated, of $22,800.00, which would be less than $84.00 per month for the 272 months from January 1, 1837 to September 29, 1959. This amount of $84.00 per month was just about enough to pay room and board to Mrs. Yates, and would certainly leave no substantial amount of Mr. Harrison's money to be used in purchasing properties of any kind.

Furthermore, there were introduced into the record in this case original checks signed by Mrs. Bess Yates to Mr. Harrison, totalling $3,386.40; and these checks covered only the period from February 17, 1955 until the time of Mrs. Yates' death in September, 1959. Thus, Mr. Harrison received from Mrs. Yates a substantial amount of money which he used in buying cattle and other items, all of which were awarded to him by the decree in this case. There are other facts in this record that he and Mrs. Yates bought a tract of property called, "Green Acres", for $2,000.00; and that they subsequently sold the property for $12,000.00 and used a large portion of the proceeds to buy savings and loan certificates in Mrs. Yates' name. Mr. Harrison seeks to impress a resulting trust on these savings and loan certificates. But the record discloses that Mrs. Yates accounted on her individual income tax return for all the profit on this property; and that Mr. Harrison never made an income tax return during the entire period of time involved in this case. After studying all the record we reach the conclusion that Mr. Harrison failed to establish a trust.

II. *The Judgment Against Mr. Harrison For Rents.* The Chancery Court rendered a decree against Mr. Harrison for $700.00 for rentals accruing after the

death of Mrs. Yates, plus $215.00 collected by Mr. Harrison since the death of Mrs. Yates, making a total of $915.00. From this amount certain items were to be deducted by the attorneys; so that the net amount of the decree against Mr. Harrison was $858.15.

With becoming candor the attorneys for the appellees state that there might have been some items overlooked, and they are willing that the decree be reduced by $125.00, which would leave a net decree against Mr. Harrison to be $733.15. We accept the good faith statement made by the attorneys for the appellees; and we affirm the decree in its entirety, except that we order a remittitur of $125.00 on the money decree rendered against Mr. Harrison. All costs of the appeal are to be taxed against the appellant.